IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 17-mj-3350 SCY |
| | ) | |
| vs. | ) | |
| | ) | |
| **JEROME DAYZIE,** | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States of America, through undersigned counsel, hereby responds to Defendant's Motion to Modify Conditions of Release. Doc. 12. The United States opposes the Defendant's requests and in support, states as follows:

**I.    Factual Background**

On December 11, 2017, the Defendant was charged with Involuntary Manslaughter a crime that occurred in Indian Country, in violation of 18 U.S.C. § 1112 and 1153; Driving Under the Influence of Intoxicating Liquor, in violation of N.M. Stat. § 66-8-102 (1978); and Reckless Driving, in violation of N.M. Stat. § 66-8-113 (1978). Doc. 1. The criminal complaint alleges that on December 9, 2017, the Defendant crashed his vehicle into a trailer that was parked on the side of the road. Consequently, John Doe-1, the back passenger inside the Defendant's vehicle, was killed. *Id*. An agent with the Federal Bureau of Investigation ("FBI") interviewed the Defendant. *Id*. The Defendant admitted that he was the driver of the vehicle and had consumed alcohol prior to the vehicle collision. *Id.*

The FBI agent also interviewed the Defendant's wife, T.D., who was the front passenger in the vehicle. T.D. indicated that earlier in the day, she, the Defendant and John Doe-1 had purchased alcohol and they were all drinking alcohol prior to the vehicle collision. *Id.* She also stated that at some point while the Defendant was driving to Round Rock, Arizona, she fell asleep, but woke up when the Defendant crashed into the back of the trailer that was parked on the side of the road. *Id.* She indicated that due to the collision between the vehicle driven by the Defendant and the trailer parked on the side of the road, John Doe-1 was thrown out of the vehicle. *Id.* She said she attempted to wake John Doe-1 while he was on the ground, but John Doe-1 did not respond. *Id.* When law enforcement officers arrived on scene, John Doe-1 was pronounced dead. *Id.*

Law enforcement officers interviewed witnesses on scene. One of the witnesses, who was driving his vehicle behind the Defendant's vehicle before the collision, indicated that he observed the "white Explorer [the Defendant's vehicle] swerving from side to side." The owner of the trailer was also interviewed and indicated that his trailer was parked "off the roadway to the north side of the road" when the Defendant's vehicle collided into his trailer. In addition, an officer with the Navajo Nation spoke with the Defendant and noticed that the Defendant had bloodshot eyes, a strong odor of alcohol emitting from his person and breath, and slight slurred speech.

## II.    Procedural Background

On December 11, 2017, the criminal complaint was filed and the Defendant was arrested. Docs. 1 and 2. On December 12, 2017, the Defendant appeared before the Court for his initial hearing. Doc. 4. He was detained pending preliminary and detention hearings. Doc. 5. On December 15, 2017, the Defendant waived the preliminary hearing and grand jury presentment.

Docs. 8 and 9.  On that same date, the Court held a detention hearing and released the Defendant to La Pasada Halfway House on conditions of release.  Doc. 11.  As part of his conditions of release, the Court ordered that the Defendant must not have contact with any witnesses related to this matter.  Doc. 11, ¶ 7(g).  This statutory condition prohibits the Defendant to have contact with T.D. because she is a witness of the crime.  On December 21, 2017, the Defendant filed a motion requesting the Court to modify his conditions of release; specifically, the condition that precludes him from having contact with T.D.  Doc. 12.  The United States opposes the Defendant's request on the basis that this statutory pretrial condition is necessary to assure the integrity of the judicial proceedings against the Defendant.

### III.     Legal Argument

The Defendant is requesting the Court to modify his conditions of release and allow him to have contact with his wife T.D.  The Defendant claims that the pretrial condition that prohibits defendants from having contact with witnesses may have "Constitutional implications."  Doc. 12, ¶ 4.  However, the Defendant failed to explain these "Constitutional implications" in order to support his claim.

First, there are no new circumstances that merit a modification to the Defendant's conditions of release.  Section 3142(f) of Title 18 provides:

> The [detention] hearing may be reopened, before or after a determination by the judicial office, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Here, the Court considered the factors set forth in section 3142(g) before releasing the Defendant to La Pasada Halfway House on conditions of release.  The conditions imposed by the Court considered the fact that the Defendant's wife is a potential witness in the case.  Thus, the

Defendant's circumstances have not changed and the Defendant's conditions of release must not be modified.

Second, the statutory condition that does not allow the Defendant to have contact with T.D. is required to avoid the subversion of the judicial process through coercion, manipulation or collusion.  *See United States v. Pickel*, 500 Fed.App'x. 771, 772 (10th Cir. 2012).  Section 3142(c) of Title 18 allows the judicial officer to release a defendant under conditions that may include to "avoid all contact with . . . a potential witness who may testify concerning the offense[.]"  18 U.S.C. § 3142(c)(1)(B)(v).  This condition is necessary to assure the integrity of the judicial process against the Defendant.  For instance, the condition prevents the Defendant to tamper with T.D.'s testimony.

In *United States v. Pickel,* 500 Fed.App'x. 771 (10th Cir. 2012), the defendant Pickel was charged with drug-related counts, including a conspiracy charge.  At the detention hearing, Pickel objected to the United States' request that he be required to avoid contact with his girlfriend and mother of his young child, whom he also considered as his common-law wife.  The United States explained that Pickel's girlfriend "was a potential witness because she was in the car with Mr. Pickel when it was stopped and found to contain 40 pounds of marijuana."  *Id.*  The district court overruled Pickel's objection after noting the nature of Pickel's offenses and finding that the "no-contact order was necessary to assure the safety of the community because the potential intimidation of, and collusion with, witnesses, would subvert the judicial process."  *Id.*  The Tenth Circuit affirmed the district court's order.

Similarly, in *United States v. Belair*, 2017WL4758964 (D. Kansas), the defendant Belair asked the court to modify her conditions of release so that she could have contact with her fiancé and co-defendant.  Contrary to the instant case, in *Belair*, "the United States decline[d] to take a

4

position on the request." *Id.* at *1.  The district court citing *United States v. Salerno*, 481 U.S. 739 (1987), explained that "the court . . . can forbid contact with specified individuals to ensure that a defendant does not threaten the judicial process by, intimidating witnesses [.]" *Belair*, at *2.  For example, the district court explained that "[i]n a conspiracy case, courts must evaluate whether pretrial contact among alleged coconspirators will permit them to rehearse or fabricate testimony . . . [and] such conduct would threaten "the courts' role in adjudicating the guilt or innocence of defendants." [*Salerno*, 481 U.S.] at 753." *Belair*, at *2.  In the instant case, the United States does not allege that T.D. is a coconspirator.  It poses that *Belair* illustrates how the judicial process against the Defendant can be affected if the Defendant and T.D. have contact.

In *Belair*, the district court ultimately modified Belair's conditions of release to permit her to have telephone contact with her fiancé "so long as [her fiancé and coconspirator] remain[ed] detained[.]" *Id.* at *3.  The rationale of the district court was that telephonic conversations with inmates are recorded, which might prevent the parties to engage in prohibited conduct.  *See id.*  The modification ordered by the court in *Belair* is not an alternative in the instant case since the Defendant is not incarcerated and there are no mechanisms to monitor any prohibited conduct.

The Supreme Court has held that the Bail Reform Act "fully comports with constitutional requirements." *Salerno*, 481 U.S. at 741.  In *Salerno*, the Supreme Court explained, "[t]he Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious crimes . . . [and] the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." *Id.* at 747.  Moreover, it held that "[t]he government's interest in preventing crime by arrestees is both legitimate and compelling." *Id*. at. 749.  Here, T.D.'s testimony is a critical part of the case since she made statements that implicated the

Defendant as the driver of the vehicle and confirmed that the Defendant was drinking alcohol prior to the incident. If the Court allows the Defendant to have contact with T.D., her testimony could be tampered by her interactions with the Defendant.

The statutory pretrial condition that prohibits contact with witnesses is constitutional. It would be different if the condition that prohibits the Defendant's contact with T.D. were to be imposed as a supervised release condition. Had that been the case, the restriction would be unconstitutional because a supervised release condition is considered as part of the punishment. *See United States v. Hobbs*, 845 F.3d 365 (8th Cir. 2016).

Lastly, the Defendant alleged that the practical concern is that they need to have contact "to run a household and finances for the support of [their] children." *Id.* This claim is too broad. However, the Defendant and the pretrial officer can establish a plan so that the Defendant's children can receive financial support from the Defendant.

### IV.    Conclusion

WHEREFORE, for the foregoing reasons, the United States respectfully requests the Court deny the Defendant's motion to modify his conditions of release.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

*Electronically filed 1/2/2018*
RAQUEL RUIZ VELEZ
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274
(505) 346-7296 fax

I HEREBY CERTIFY that on the 2nd
day of January, 2018 I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
to be served by electronic means on this date.
/s/_____
Raquel Ruiz Velez
Assistant U.S. Attorney