IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. No. 18-1171 MV |
| | ) | |
| vs. | ) | |
| | ) | |
| **JEROME DAYZIE**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States hereby files its sentencing memorandum and respectfully requests the Court to sentence Defendant to a term of imprisonment of 46 months, which is at the high end of the applicable guideline range. In support thereof, the United States submits the following:

### I.      PROCEDURAL BACKGROUND

On December 11, 2017, a criminal complaint was filed charging Defendant with Involuntary Manslaughter a crime that occurred in Indian Country, in violation of 18 U.S.C. §§ 1153 and 1112; Driving Under the Influence of Intoxicating Liquor, in violation of N.M. Stat. Ann. § 66-8-102; and Reckless Driving, in violation of N.M. Stat. Ann. § 66-8-113. Doc. 1. On December 12, 2017, Defendant appeared before the Court for his initial hearing. Doc. 4. On December 15, 2017, Defendant waived the preliminary hearing and grand jury presentment. Docs. 8 and 9. On that same date, the Court held a detention hearing and released Defendant to La Pasada Halfway House on conditions of release. Doc. 11. On April 16, 2018, Defendant pleaded guilty to an Information charging him with Involuntary Manslaughter, in violation of 18 U.S.C. §§ 1153 and 1112. Doc. 23.

A presentence investigation report (PSR) was disclosed on June 14, 2018. Doc. 28. According to the PSR, Defendant's total offense level is 19 (PSR ¶ 39) and his criminal history category is III (PSR ¶ 49), resulting in a total guideline imprisonment range of 37 to 46 months (PSR ¶ 73). The United States hereby requests a term of imprisonment at the high end of Defendant's guideline range.

## II.     FACTUAL BACKGROUND

On December 9, 2017, Defendant recklessly operated a motor vehicle while under the influence of alcohol causing the back seat passenger, John Doe, to be killed. Doc. 1. Defendant was driving a white Ford Explorer on NR13, south of Shiprock and west of US491, when he crashed into a flatbed trailer. Doc. 30-1 at 3. The trailer, which was loaded with furniture, was attached to a pickup truck parked on the side of the road. *Id.* After crashing into the rear of the flatbed trailer, Defendant's vehicle rotated clockwise and "tipped onto the driver side in the middle of the road." *Id.* Consequently, John Doe was ejected and "pinned under the driver side of [Defendant's vehicle] at final rest." *Id.* John Doe died on scene. *Id.* A medical investigator with the Office of the Medical Investigator ("OMI") determined that John Doe sustained blunt injuries to the head, trunk and extremities. Discovery Bates Number ("Bates No.") 664. The OMI investigator concluded that John Doe's "[d]eath was caused by blunt chest trauma." Bates No. 655.

Law enforcement officers interviewed witnesses on scene. One of the witnesses was driving his vehicle behind Defendant's vehicle before the fatal crash, and he indicated that he observed the "white Explorer [Defendant's vehicle] s[w]erving from side to side." Bates No. 8. The witness indicated that he "later saw the white Explorer hit the trailer and roll[ed] once landing [on the] driver's side." *Id.* Officers also interviewed the owner of the flatbed trailer. *Id.*

He was stunned by the incident. *Id.* He indicated that he and his son were driving to Arizona when they noticed that the straps that were holding the furniture on the flatbed trailer seemed to be loosed. *Id.* His son, who was driving the pickup truck, "pulled off the roadway to the north side of the road" and stopped on the westbound shoulder of the road to check the straps that were securing the cargo. *Id.; see also* Doc. 30-1 at 3. After checking the straps, they observed Defendant's vehicle collide with the rear of the flatbed trailer. Bates No. 8. According to police reports, neither the owner of the flatbed trailer nor his son sustained injuries. *Id.*

Defendant was transported to the Northern Navajo Medical Center for medical treatment for his injuries. PSR ¶ 16. Blood samples were drawn from Defendant as part of a routine medical assessment. PSR ¶ 17. A blood analysis determined that Defendant's blood alcohol content ("BAC") was 0.196. *Id.; see also* Bates No. 88-101. Defendant was subsequently interviewed by an agent with the Federal Bureau of Investigation ("FBI"). Doc. 1 at 3-4. Defendant admitted that he was the driver of the vehicle and that he had consumed alcohol prior to the vehicle crash. *Id.*

### III.   ARGUMENT

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of federal sentencing. *See United States v. Booker*, 543 U.S. 220 (2005). Among other factors, a court must consider the nature of the offenses, need for adequate deterrence and to reflect the seriousness of the offense, and the applicable sentencing guidelines. 18 U.S.C. § 3553(a).

#### A. The Nature and Circumstances of the Offense

Defendant's reckless conduct warrants a sentence at the high end of the applicable guideline imprisonment range. For example, the Tenth Circuit has explained that excessive high

blood alcohol content is demonstrative of "extraordinary recklessness." *See United States v. Lente*, 647 F.3d 1021, 1031 (10th Cir. 2011) (acknowledging that a district court's determination that a defendant's BAC of .21 was "significantly over the statewide average" was properly considered as evidence of extraordinary recklessness). In *Lente*, the district court noted that the average DUI offender had a BAC of .16. *Id.* at 1028. Thus, a higher BAC warrants a higher sentence such as the high end of the applicable guideline range.

Defendant's operation of a motor vehicle with a BAC of 0.196 was extraordinarily reckless and warrants a sentence of 46 months of imprisonment. Defendant crashed his vehicle into the rear of a flatbed trailer that was attached to a pickup truck parked on the side of the road. Not only did Defendant's reckless conduct cause the death of John Doe, Defendant's conduct endangered the life of others. Defendant could have injured or killed his wife, who was sitting in the front passenger seat, and innocent bystanders such as the pickup truck owner and his son. Defendant's BAC of 0.196 was nearly twice the legal limit. This BAC is considerably higher than the 0.16 "heartland" noted in *Lente*. Thus, a term of imprisonment at the high end of the applicable guideline range is appropriate.

### B. History and Characteristics of Defendant

Defendant's criminal history shows a history of substance abuse, which includes five arrests for Driving Under the Influence ("DUI") of Liquor and/or Drugs. PSR ¶¶ 42-46, 52. Four of the five arrests resulted in convictions. PSR ¶¶ 42-46. Out of the four convictions, only two were considered for the calculation of Defendant's criminal history category. PSR ¶¶ 45-46. It is troubling that Defendant was sentenced for these two convictions on June 21, 2016 and January 12, 2017, less than two years before the instant offense. *Id.* Defendant's convictions

show that he was aware of the illegality of his conduct when he decided to drive his vehicle while under the influence of alcohol on December 9, 2017.

Defendant has a long history of drinking and driving. PSR ¶¶ 42-45, 52. His past conduct has endangered the life of others, including the life of his 15-year-old son. PSR ¶ 45. In the instant case, Defendant caused the death of John Doe, and endangered the life of his wife and innocent motorists. Given Defendant's history and characteristics, a sentence at the high end of the applicable guideline range is appropriate.

### C. The Need for the Sentence Imposed to Promote Respect for the Law, Provide Just Punishment, Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

A sentence of 46 months of imprisonment would reflect the seriousness of the offense and provide adequate deterrence. Deterrence includes both general deterrence and specific deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). While the goal of general deterrence is "to deter others from committing the same crime by demonstrating its disadvantageous consequences," the goal of specific deterrence is "to incapacitate the wrongdoer, so as to protect society from further criminal activity." *United States v. Irey*, 612 F.3d 1160, 1227 (11th Cir. 2010). An overly lenient sentence "signals to others that it is not a big deal to repeatedly defy United States' laws." *United States v. Corchado-Aguirre*, 629 F. App'x 837, 840 (10th Cir. 2015). This takes special consideration when the crime results in the death of an individual. As "[i]t is the most serious kind of crime one can have to take the life of one human being." *United States v. Gibbs*, 237 F. App'x 550, 563 (11th Cir. 2007).

A sentence of 46 months of imprisonment reflects the seriousness of the offense and provides adequate deterrence. As a general deterrent, a sentence at the high end of the applicable guideline range would demonstrate to others the disadvantageous consequences of driving at a

BAC of 0.196.  As a specific deterrent, Defendant will be deterred from similar criminality for at least the duration of his imprisonment.  Furthermore, given that Defendant's conduct resulted in the death of John Doe, a significant term of imprisonment is warranted to recognize the seriousness of his conduct.

### D. The Sentencing Guidelines for the Applicable Category of Offense Committed by the Applicable Category of Defendant

One of the § 3553(a) factors that the Court must consider is the sentencing range established by the United States Sentencing Commission for the applicable category of offense committed by the applicable category of defendant.  The Supreme Court has recognized that even in the post-*Booker* world "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise . . .'" *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007).  "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'"  *Id.*  As noted above, the guideline range for this category of offense and Defendant's criminal history has been set by the Commission at 37 to 46 months, and the Court must consider this range in determining Defendant's sentence.  The United States submits that a sentence of 46 months is supported by Defendant's history and characteristics, and the seriousness of the offense.

Lastly, pursuant to the Mandatory Victim's Restitution Act, and as agreed upon by the parties in the Plea Agreement, an order of restitution must be entered in this case.  Doc. 26, ¶ 16.  For instance, Defendant must pay the amount of $1,592.97 to the New Mexico Crime Victims Reparation Commission as part of his sentence.  PSR ¶¶ 20, 27 and 84.  In addition, the victim's family may seek to supplement the restitution request.

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests the Court to impose a sentence of 46 months of imprisonment, followed by three years of supervised release, $100 special penalty assessment and restitution. This sentence is "sufficient, but not greater than necessary, to comply with the [sentencing goals]." 18 U.S.C. § 3553(a).

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed 02/07/2019*
RAQUEL RUIZ VELEZ
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico  87103
(505) 346-7274
(505) 346-7296 fax

I HEREBY CERTIFY that on the 7th
day of February, 2019 I filed the foregoing
pleading electronically through the CM/ECF
system, which caused counsel of record
to be served by electronic means on this date.
*/s/*
Raquel Ruiz Velez
Assistant U.S. Attorney